UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHERRY A. KRSTOVSKI and
KRIS KRSTOVSKI,

    Plaintiffs,                                Civil Action No. 13-CV-11722

vs.                                                    HON. BERNARD A. FRIEDMAN

DEUTSCHE BANK NATIONAL TRUST
COMPANY, AS TRUSTEE OF THE
RESIDENTIAL ASSET SECURITIZATION
TRUST 2005-A4, MORTGAGE PASS
THROUGH CERTIFICATES, SERIES 2005-D
and ONE WEST BANK, FSB,

    Defendants.
_____/

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

This matter is presently before the Court on defendants' motion to dismiss [docket entry 4]. Plaintiffs have filed a response in opposition, and defendants have filed a reply. Pursuant to E.D. Mich. LR 7.1(f)(2), the Court shall decide this motion without oral argument.

This is a wrongful foreclosure action. The essential facts are not in dispute. In November 2006 plaintiffs gave a mortgage in real property to IndyMac Bank ("IndyMac"). *See* Compl. ¶ 7. The mortgage secured a $331,200 loan plaintiffs obtained from IndyMac to purchase the property (two vacant lots, tax parcels numbers 22-22-301-023 and 22-22-301-024), located in Novi, Michigan. In 2010 plaintiffs "[fell] behind on their property taxes." *Id.* ¶ 14. In a letter dated November 4, 2011, defendant OneWest Bank, the loan servicer, notified plaintiffs that they were delinquent in paying the 2010 property taxes on parcel '023 in the amount of $7,993.78. *Id.* ¶ 14 and Ex. 1. OneWest Bank wrote:

    This loan is not escrowed for the payment of taxes, therefore, it is

> your responsibility to pay them. By not paying your taxes, you have placed Indymac's interest in the property, as well as your own, at risk. You could lose your home to tax sale if taxes remain unpaid.
>
> If you have already paid the taxes, please provide acceptable proof to us no later than 11/7/2011 along with a copy of this letter . . . .
>
> If you have NOT paid the taxes, please do so immediately to avoid possible tax sale and/or additional penalties. As provided in your mortgage failure to pay your property taxes can result in an increase in your monthly mortgage payment to include an escrow payment equivalent to one-twelfth (1/12th) of any taxes currently due as well as taxes that will become due in the next year.

*Id.*

> The referenced provision of the mortgage states:
>
> . . . If Borrower is obligated to pay Escrow items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 to pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Defs.' Mot. to Dismiss, Ex. B ¶ 3. The referenced section 9 permits the lender to "do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property" when, among other things, "Borrower fails to perform the covenants and agreements contained in this Security Instrument." *Id.* ¶ 9. The referenced section 15 permits notices from lender to borrower to be made by first-class mail. *Id.* ¶ 15. Plaintiffs concede that "[p]er the mortgage agreement there was no escrow established and Plaintiffs were responsible for paying the property taxes and homeowners insurance on their own." Pls.' Resp. Br. at 2.

On November 4, 2011, plaintiffs paid the delinquent property taxes on parcel '023

and "immediately sent notice to Defendant OneWest of the payment." Compl. ¶ 15 & Ex. 2.

> In a letter to plaintiffs dated November 21, 2011, IndyMac wrote:
>
> [We] previously advised you that property taxes were seriously delinquent on the above property address. Since we did not hear from you, the delinquent taxes and all penalties have been advanced by IndyMac Mortgage Services as provided for in your mortgage agreement. An escrow account has been established on the mortgage to ensure that all future property taxes are paid and to reimburse IndyMac Mortgage Services for the funds advanced to bring your taxes current.
>
> Within the next week you will receive an escrow account disclosure statement showing your new payment amount and effective date. The escrow account will be reviewed annually for changes in the tax bills and required escrow reserves. The escrow account will be required for the remainder of the mortgage loan term.

Defs.' Mot. to Dismiss, Ex. C. Plaintiffs asked OneWest "to remove the escrow account and reestablish the original monthly mortgage payment," but this request was denied. Compl. ¶ 18-19.

Plaintiffs "could no longer afford to pay the drastically increased mortgage payment, and as such sought a loan modification . . . ." *Id.* ¶ 20. In a letter to plaintiffs dated February 9, 2012, IndyMac wrote:

> Thank you for your request to modify your mortgage loan serviced by IndyMac Mortgage Services, . . .
>
> We are unable to complete the review of your loan because the following document(s) were not received by the date they were due or we were not able to use them in the review of your application. As a result you are no longer being considered for a modification at this time.
>
> **Missing Documents:** The documents below were not received by IndyMac Mortgage Services.
> • Proof of Income
>
> **Rejected Documents:** The documents below were rejected for one or more reasons.

3

- 4506-T
- Request for Mortgage Assistance (RMA) Form
- Tax Returns

Defs.' Mot. to Dismiss, Ex. D.

In a letter to plaintiffs dated May 11, 2012, a new "customer contact team" manager introduced himself and stated:

> No action is needed from you at this time. My team is reviewing your current situation and evaluating possible workout options to help you avoid foreclosure.
>
> *   *   *
>
> **Loan Modification Application Requirements**
> A borrower will be deemed to have requested consideration for a loan modification when a complete application is submitted to and accepted by IndyMac Mortgage Services. For an application to be complete the following items must be submitted to and accepted by IndyMac Mortgage Services:
>
> - Request for Mortgage Assistance Form;
> - A completed and signed IRS Form 4506-T or 4506T-EZ;
> - Supporting income documentation required for each declared income source; . . .
>
> **Important – Do no ignore any foreclosure notices:**
>
> The loan modification evaluation and foreclosure process may proceed at the same time. You may receive foreclosure/eviction notices – delivered by mail or in person – or you may see steps being taken to proceed with a foreclosure sale of your home. To protect your rights under applicable foreclosure law, you may need to respond to these foreclosure notices or take other actions. . . .
>
> **Important Information for Borrowers Previously Denied for a loan modification:**
>
> For borrowers previously evaluated for a loan modification who did not successfully complete the modification or who were determined to be ineligible for a modification, IndyMac Mortgage Services will consider an additional request for consideration of a loan

> modification only if specific conditions are met. If this relates to your specific situation, please contact us . . . to see if you meet those conditions.

Defs.' Mot. to Dismiss, Ex. E.

In June 2012 the mortgage in question was assigned to Deutsche Bank National Trust Company ("Deutsche Bank"). *See* Defs.' Mot. to Dismiss, Ex. F. On July 24, 2012, the mortgaged property was sold at a sheriff's sale. *See* Compl. ¶ 25.

Plaintiffs commenced the instant action on January 23, 2013, one day before the redemption period expired. They assert claims against Deutsche Bank and One West Bank for violations of Michigan's foreclosure laws (Count I), breach of contract (Count II), fraud in the inducement (Count III), fraud/misrepresentation (Count IV), quiet title (Count V), slander of title (Count VI), promissory estoppel (Count VII), "relief from sheriff sale and/or set aside foreclosure" (Count VIII), and for various declaratory and injunctive relief (Count IX). *See* Compl. ¶¶ 37-114.

*Defendants' Motion to Dismiss*

Defendants seeks dismissal of all of plaintiffs' claims under Fed. R. Civ. P. 12(b)(6). The legal standards governing such a motion are well known:

> In order to survive a motion to dismiss for failure to state a claim upon which relief may be granted, a complaint must plead sufficient specific factual allegations, and not just legal conclusions, in support of each claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). A complaint will be dismissed unless, when all well-pled factual allegations are accepted as true, the complaint states a "plausible claim for relief." *Id*. at 679. In ruling on a motion to dismiss, the Court may consider the entire complaint, documents incorporated by reference in the complaint and central to the claims, and matters on which a court may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007). Materials on which a

5

court may take judicial notice include public records.

*Benchick v. Loanstar Lending, Inc.*, 2012 WL 6150428, at *2 (E.D. Mich. Dec. 11, 2012) (citation omitted).

Defendants first argue that Counts I, V, VI, VIII and IX, all of which challenge the foreclosure and seek to set aside the sheriff's sale, fail because plaintiffs do not allege fraud or irregularity in the foreclosure process. Plaintiffs appear to acknowledge that they must make such a showing, but they argue they have done so by pointing to (1) statements made in IndyMac's November 4, 2011, and May 11, 2012, letters, and (2) an alleged irregularity in the assignment of the note from IndyMac to "Defendant U.S. Bank," Pls.' Resp. Br. at 9, 10, 11, 12, 13, although U.S. Bank is not a defendant in this matter.

The law on this issue was recently summarized by the U.S. Court of Appeals for the Sixth Circuit as follows:

> "Once th[e] statutory redemption period lapses, however, [plaintiff's] 'right, title, and interest in and to the property' are extinguished." *Conlin*, 714 F.3d at 359 (quoting *Piotrowski v. State Land Office Bd.*, 302 Mich. 179, 4 N.W.2d 514, 517 (Mich.1942), and citing Mich. Comp. Laws § 600.3236). "Michigan courts have held that once the statutory redemption period lapses, they can only entertain the setting aside of a foreclosure sale where the mortgagor has made 'a clear showing of fraud, or irregularity.'" *Id.* (quoting *Schulthies v. Barron*, 16 Mich.App. 246, 167 N.W.2d 784, 785 (Mich.Ct.App.1969)). "It is further clear that not just any type of fraud will suffice. Rather, '[t]he misconduct must relate to the foreclosure procedure itself.'" *Id.* at 360 (alteration in original) (quoting *El–Seblani v. IndyMac Mortg. Servs.*, 510 F. App'x 425, 429 (6th Cir. 2013)). Here, "[a]s the six-month statutory redemption period has long since lapsed and the filing of a lawsuit is 'insufficient to toll the redemption period,' [plaintiff] must make a clear showing of fraud or irregularity to maintain this action." *Id.* (quoting *Overton v. Mortg. Elec. Registration Sys.*, No. 284950, 2009 WL 1507342, at *1 (Mich.Ct.App. May 28, 2009)).

6

> In attempting to establish fraud or irregularity in the foreclosure process, Carmack argues that he may challenge the validity of the mortgage assignment to BNYM because his claims regarding the assignment's validity "go to the heart of whether Michigan's foreclosure by advertisement [procedure] was followed," namely whether BNYM held title to the mortgage as required by Mich. Comp. Laws § 600.3204(3) and whether it held an interest in the indebtedness as required by § 600.3204(1)(d).
>
> In an appeal challenging a foreclosure by advertisement, this court reasoned that the plain language of Mich. Comp. Laws § 600.3204(3) required only that the public record show that the mortgage had passed to the foreclosing party and that a record chain of title is not "destroyed by an irregularity affecting the validity of a transfer." *Livonia Props. Holdings, LLC v. 12840–12976 Farmington Rd. Holdings, LLC*, 399 F. App'x 97, 101 02 (6th Cir. 2010). The court further reasoned that "even if there were a flaw in the assignment, [the borrower did] not have standing to raise that flaw to challenge [the assignee]'s chain of title." *Id*. at 102. The court agreed with the district court's observation that "there is ample authority to support the proposition that a litigant who is not a party to an assignment lacks standing to challenge that assignment." *Id*. (internal quotation marks omitted); *cf. Bowles v. Oakman*, 246 Mich. 674, 225 N.W. 613, 614 (Mich.1929) (holding that promissor could not challenge obligations under a note by asserting that an invalid assignment had occurred).

*Carmack v. Bank of New York Mellon*, 2013 WL 4529871, at *2 (6th Cir. Aug. 27, 2013) (footnotes omitted). The court went on to indicate that

> "a party subject to foreclosure has standing to challenge whether a lender holds record chain of title, but that determination is limited to an examination of the public records." [*Livonia*] at 103. Citing *Livonia*, Michigan appellate courts have rejected challenges to mortgage assignments, but have recognized that such challenges may be permitted "under limited circumstances," ostensibly where the borrower has a valid claim that he will face double liability. *See, e.g., Bank of N.Y. Mellon Trust Co., Nat'l Ass'n v. Monsivaes*, No. 310696, 2013 WL 2495045, at *3 n. 4 (Mich.Ct.App. June 11, 2013); *Famatiga v. Mortg. Elec. Registration Sys.*, No. 304726, 2013 WL 1137186, at *2 (Mich.Ct.App. Mar.19, 2013).

*Carmack* at *3. By "double liability" the court was referring to the possibility that a mortgagor may

7

have to "pay the same debt twice" due to uncertainty as to the true owner of the note. *Livonia*, 399 F. App'x at 102. However, this risk evaporates when the assignee shows "that it was in possession of the note and had been assigned all rights therein prior to the initiation of foreclosure proceedings." *Id.*

In the present case, plaintiffs have failed to show any fraud or irregularity in the foreclosure process. The premise of plaintiffs' entire case is that defendant One West Bank caused them to default by wrongfully escrowing the property taxes, thereby creating a "huge increase in the monthly mortgage payment" that plaintiffs could not afford to pay. Pls.' Resp. Br. at 8. This argument is nothing less than ridiculous. Plaintiffs acknowledge that they neglected to pay the 2010 property taxes until they received One West Bank's November 4, 2011, letter pointing out the delinquency. They further acknowledge that they were responsible for paying these taxes, as they were not being collected and escrowed by One West Bank, IndyMac's loan servicer. By November 2011, the 2010 summer taxes were more than one year overdue and the winter 2010 taxes were more than eight months overdue. Under the above-quoted provisions of the mortgage, IndyMac had every right to pay the delinquent taxes, lest the property be lost in a tax sale, and require plaintiffs to reimburse it for the tax payment and to pay monthly into escrow 1/12 of the next year's projected tax bills.

Notwithstanding plaintiffs' protestations to the contrary, IndyMac's November 4, 2011, letter did not in any way indicate that the taxes would not be escrowed if plaintiffs paid the delinquent taxes by November 7, 2011. The letter simply asked plaintiffs to provide proof by that date if they had already paid the delinquent taxes, which plaintiffs concede they had not, and reminded them that "failure to pay your property taxes can result in an increase in your monthly

8

mortgage payment to include an escrow payment . . . ." Whether or not plaintiffs paid the taxes at that time and whether or not they informed IndyMac or One West Bank that they had done so, are issues that have no bearing on IndyMac's right to require plaintiffs to escrow the property taxes, as plaintiffs clearly had *already* "fail[ed] to perform the covenants and agreements contained in this Security Instrument." Mortgage ¶ 9. Therefore, the Court rejects plaintiffs' argument that defendant One West Bank (or its principal, IndyMac) engaged in any type of fraud or irregularity in its November 4, 2011, letter.

    The Court also rejects plaintiffs' argument that fraud or irregularity may be found in IndyMac's May 11, 2012, letter. Plaintiffs' suggestion that this letter somehow could be interpreted as indicating that "all the loan modification documents have been received and no further action is required," and that plaintiffs were free to "not take further action and instead waited for the results of the ongoing loan modification review," is absurd. Pls.' Resp. Br. at 8, 15. IndyMac informed plaintiffs three months earlier, in its February 9, 2012, letter that their request for a loan modification could not be processed because various documents were either missing or had been rejected, and plaintiffs do not allege that they submitted the missing/rejected documents thereafter. While the May 11, 2012, did indicate that "[n]o action is needed from you at this time," it manifestly did not say that plaintiffs' loan modification request was complete or under review. The May 11 letter did – on page 2, which is missing from Ex. 3 attached to the complaint – clearly warn plaintiffs that "[t]he loan modification evaluation and foreclosure process may proceed at the same time" and that they should not disregard any foreclosure notices. There is no fraud or irregularity in the foreclosure process evident in the May 11, 2012, letter.

    Finally, plaintiffs make an elaborate argument that due to some alleged defect in the

9

chain of title having to do with a provision of the pooling and servicing agreement not being followed, "Defendant U.S. Bank is not the original holder of the promissory note" and it therefore lacks standing to foreclose. Pls.' Resp. Br. at 9-13. As noted, U.S. Bank is not a defendant in this matter and so far as the Court is aware it has no connection with this case. Even assuming plaintiffs could show a technical defect in the chain of title as to the note, defendant Deutsche Bank nonetheless clearly had authority to foreclose the mortgage because it is the duly recorded assignee of the mortgage, as evidenced by Ex. F attached to the complaint. This assignment, recorded with the Oakland County Register of Deeds on June 20, 2012, indicates that Deutsche Bank obtained the mortgage to the real property in question from the Federal Deposit Insurance Corporation, as receiver for IndyMac, on June 15, 2012. As the mortgagee, Deutsche Bank was authorized under Mich. Comp. Laws § 600.3204(1)(d) to foreclose the mortgage. *See Residential Funding Co., L.L.C. v. Saurman*, 490 Mich. 909 (2011). It did so after the date of the assignment by publishing the required legal notice on June 21, June 28, July 5 and July 12, 2012. *See* Notice of Removal, Ex. B. As it turns out, Deutsche Bank also possesses the note, endorsed in blank without recourse by IndyMac, *see* Defs. Reply, Ex. A, but the recorded assignment, by itself, showing Deutsche Bank as the mortgagee suffices to provide it with statutory authority to foreclose the mortgage.

The Court concludes that plaintiffs have failed to show that the sheriff's sale in this matter may be set aside due to any fraud or irregularity committed by defendants. Defendants are therefore entitled to the dismissal of Counts I, V, VI, VIII and IX for failure to state a claim.

The remaining counts of the complaint fare no better. Count II claims that "in a correspondence dated May 11, 2012, Defendant One West advised Plaintiffs that their modification was being reviewed" and that it "breached its obligations by failing to approve or deny Plaintiffs for

10

a loan modification and simply proceeding with the foreclosure while an active loan modification was under review." Compl. ¶¶ 60, 62. Based on the same allegations, plaintiffs assert fraud claims in Counts III and IV and a promissory estoppel claim in Count VII. As noted above, the May 11 letter did not indicate that plaintiffs' loan application was being reviewed. Rather, it introduced a new "customer contact manager" who stated in quite noncommittal terms that his "team is reviewing your current situation and evaluating possible workout options to help you avoid foreclosure." There is no mention of a pending loan modification request. In an earlier correspondence dated February 9, 2012, IndyMac informed plaintiffs that their loan modification request could *not* be reviewed because certain documents were missing or had been rejected and, as noted, plaintiffs do not allege they supplied the required documents. Plaintiffs have shown no agreement to review an incomplete loan modification request, no breach, no fraud and no reasonable reliance. Nor do plaintiffs allege defendants failed to comply with any provision of the statutory loan modification procedures. *See* Mich. Comp. Laws § 600.3205a, *et seq.*

For the reasons stated above, the Court shall grant defendants' motion to dismiss. While plaintiffs would prefer to blame their property loss on their lender or the lender's servicer, the simple fact of the matter is that plaintiffs have only themselves to blame for failing to pay their property taxes when due. Plaintiffs have no claim against their lender, which did nothing more than pay a seriously delinquent tax bill and exercise its right under the mortgage to escrow the taxes and, upon plaintiffs' subsequent failure to make the required monthly payments on the note, to foreclose the mortgage. Accordingly,

IT IS ORDERED that defendants' motion to dismiss is granted.

11

```
```

Dated: December 2, 2013  
     Detroit, Michigan

S/ Bernard A. Friedman___  
BERNARD A. FRIEDMAN  
SENIOR UNITED STATES DISTRICT JUDGE

12